```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| LIBERTY HOLDINGS (NYC) LLC, and DREAMBUILDER INVESTMENTS, LLC,<br><br>                              Plaintiffs,<br><br>-against-<br><br>APOSTA, INC., and GENE HACKER,,<br><br>                              Defendants. | No. 18 Civ. 5108 (LAP)<br><br>MEMORANDUM & ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

In an Opinion & Order dated November 13, 2019, this Court imposed monetary sanctions in the amount of $7,700 on Defendants and Defendants' Counsel Vincent J. Quigg ("Mr. Quigg") for their repeated, deliberate failure to appear at Court-ordered conferences.  (See Opinion & Order Imposing Sanctions (the "November 13 Order), dated November 13, 2019 [dkt. no. 45].)  In that order, the Court noted that "[s]hould Mr. Quigg and Defendants fail to comply with [the] Order, the Court will not hesitate to impose a more drastic sanction.  (Id. at 13.)  To no one's surprise, the Court must now act on that promise.

I.   BACKGROUND

The Court need not recount Mr. Quigg's laundry list of transgressions that were the subject of the Court's November 13 Order.  Given the severity of the sanctions the Court now imposes,

1

however, it will briefly review the course of events since the issuance of that order.

On January 9, 2020, the Court received a letter from Plaintiffs' Counsel Richard Gora ("Mr. Gora") requesting a conference to discuss Defendants' failure to comply with the November 13 Order.  (See Letter Requesting Conference, dated January 9, 2020 [dkt. no. 46].)  Specifically, Mr. Gora's letter noted that Mr. Quigg had failed to pay monetary sanctions, despite the Court's order that they were to be paid within 45 days of the November 13 Order.  (Id. at 1)  In addition, Mr. Gora claimed that Defendants had completely failed to comply with their discovery obligations.  (Id.)  Mr. Gora accordingly requested that the Court issue an order to show cause why (i) Mr. Quigg's pro hac vice admission should not be revoked, (ii) Defendants' Answer should not be stricken, and (iii) a default judgment should not enter against the Defendants. (Id. at 3.)[1] The Court instructed counsel for the parties to appear for a conference on January 30, 2020, to discuss the substance of the letter.  (See Scheduling Order, dated January 9, 2020 [dkt. no. 47].)

---

[1] In reviewing the docket, the Court notes that Mr. Quigg's pro hac vice admission was never formally granted.  For the purposes of this order and in light of Mr. Quigg's filing of documents during this litigation, Mr. Quigg's original request to be admitted pro hac vice [dkt. no. 13] is GRANTED, retroactive to the date on which it was originally filed (October 3, 2018).

The night before the January 30 conference, an odd thing happened. Without further explanation, Mr. Quigg filed a notice of appearance on behalf of another attorney named Harold J. Pokel ("Mr. Pokel"). (See Notice of Appearance, dated January 29, 2020 [dkt. no. 48].) Notwithstanding the fact that lawyers do not file notices of appearance for other attorneys, the notice did not include any of Mr. Pokel's contact information. The next morning, Mr. Pokel--but not Mr. Quigg--appeared at the scheduled conference between the parties. Mr. Pokel explained to the Court the backstory behind his appearance:

> I sometimes take assignments through an agency called Per Diem, and that's what happened yesterday. They called me and asked me if I would take this and represent on behalf of Mr. Quigg because he wasn't going to be able to appear, and I said that I would do it, but that a notice of appearance had to be put in, at the very least, by counsel in California. And I was told this morning--I've had several telephone calls with Per Diem. They told me they have not be retained after all and they kind of left it to me whether to appear or not today, and I thought the right thing to do was appear.

(See Transcript of January 30 Conference, dated February 10, 2020 [dkt. no. 51] at 2:20-3:5.) In addition, Mr. Pokel explained that he spoke with someone from Mr. Quigg's office, but he or she did not provide him with any materials that would allow him to develop a working knowledge of the case of the substance of the conference. (Id. at 1:10-17.) After thanking Mr. Pokel for being mindful of his professional responsibilities, the Court agreed to issue the

3

order to show cause requested in Mr. Gora's January 9 letter.  (See dkt. no 46.)

On February 4, 2020, this Court ordered Defendants' Counsel Vincent J. Quigg ("Mr. Quigg") to show cause why:

(1) The Answer of Defendants Aposta, Inc. and Gene Hacker, dated January 4, 2018 [dkt. no. 26] should not be stricken and a default not be entered against them; and

(2) Mr. Quigg's pro hac vice admission should not be stricken; and

(3) Additional sanctions should not be imposed upon Mr. Quigg and/or Defendants Aposta, Inc. and Gene Hacker.

(See Order to Show Cause, dated February 4, 2020 [dkt. no. 50].) The Court ordered Mr. Quigg to file his response to the order--if any--by February 25, 2020.  No such response was filed.

The Court originally scheduled a hearing on that Order to Show Cause for March 9, 2020, (id.), but adjourned the conference to a later date due to the fact that Mr. Quigg's representation that he had an appearance in another matter in California, (dkt. no. 56.)  The Court only agreed to adjourn the March 9 hearing after Mr. Quigg filed a sworn affidavit detailing the particulars of the appearance and after the Court confirmed that appearance with the California court.  (See dkt. nos. 54, 55, 56.)  In its order granting the continuance, the Court noted that it "will not grant any further adjournments for [the] conference."  (See Order, dated March 6, 2020 [dkt. no. 36].)

4

On May 4, 2020, the Court ordered the parties to appear telephonically on May 19, 2020, for a rescheduled hearing on the Order to Show Cause. (See Scheduling Order, dated May 4, 2020 [dkt. no. 57].) Like clockwork, Mr. Quigg sought his escape on the evening of May 18. In a letter to the Court filed after the close of business on May 18, Mr. Quigg requested a continuance of the May 19 hearing first on the ground that, due to California's COVID-19-related stay at home order, his "office is not operating," "all of [his] staff has been sent home," and he "do[es] not have access to [his] files." (Quigg Letter, dated May 18, 2020 [dkt. no. 58].) He also claimed, without any evidence whatsoever, that he has "been ill and not able to do any work." (Id.) Mr. Quigg neglected to explain why he could not have alerted the Court to these issues at an earlier date.

Mr. Gora filed a letter the same evening objecting to any continuance of the May 19 conference. (See Gora Letter, dated May 18, 2020 [dkt. no. 59].) In that letter, Mr. Gora noted that Mr. Quigg's assertion that he could not do work due to the COVID-19 shutdown was belied by the fact that he had made numerous filings in bankruptcy court in California and had an appearance scheduled in bankruptcy court on the same day as the conference. (Id.) Second, with respect to Mr. Quigg's claim that he was too ill to work, Mr. Gora argued that Mr. Quigg had provided no evidence of his supposed condition that the Court could rely on. (Id.) The

Court denied Mr. Quigg's request for a continuance that evening on grounds substantially similar to those raised in Mr. Gora's letter. (See Order, dated May 18, 2020 [dkt. no. 60].)  A copy of that order was e-mailed to Mr. Gora and Mr. Quigg that evening, and the order was docketed the morning of May 19.

 The Court proceeded with the telephonic conference on the order to show cause at noon on May 19 with a court reporter present. Mr. Gora dialed in to the conference promptly at noon, but Mr. Quigg did not do so.  In an effort to give Mr. Quigg one last chance to appear, the Court did not go on the record until 12:11 p.m.  He did not appear.  The Court accordingly agreed to enter an order imposing the sanctions requested in the Order to Show Cause.

II.  DISCUSSION

As discussed in the November 13 Order, Federal Rule of Civil Procedure 16 empowers this Court, on motion or sua sponte, to impose sanctions on an attorney or a party who fails to appear at a scheduling or other pretrial conference," does not participate in good faith . . . in the [pretrial] conference, or "fails to obey a scheduling or other pretrial order."  See Fed. R. Civ. P. 16(f)(1)(C).  The Court's discretion to impose appropriate sanctions under Rule 16(f) is very broad; Rule 16(f) equips the Court with "discretion to impose whatever sanction it feels is appropriate under the circumstances."  Huebner v. Midland Credit

6

Mgmt., Inc., 897 F.3d 42, 53 (2d Cir. 2018)(quoting Advisory Committee's notes to 1983 amendment of Fed. R. Civ. P. 16(f)).

As the Court warned in its previous order, such appropriate sanctions under Rule 16 can be severe and can include "significant sanctions, including striking pleadings, dismissal, entry of a default judgment and contempt of court."  Chen v. Marvel Food Serv., LLC, No. 15 Civ. 6206 (JMA) (AYS), 2016 WL 6872626, at *2 (E.D.N.Y. Nov. 21, 2016).  (See also November 13 Order at 13 (citing Edwards v. Horn, No. 10 Civ. 6194 (RJS)(JLC), 2012 WL 1292672, at *1-2 (S.D.N.Y. Apr. 13, 2012) and U.S. v. Salten, No. 03 Civ. 578 (JS) (ARL), 2007 WL 1129392, at *1 (E.D.N.Y. Apr. 10, 2007).)  Indeed, the Court specifically noted in the November 13 Order that, given Mr. Quigg's lengthy track record of flouting scheduling orders, it had ample grounds to impose a default judgment.  (See November 13 Order at 12-13.)  At the time, the Court elected not to impose such a grave sanction out of the hope that Mr. Quigg and Defendants would take advantage of "a second chance to participate in this litigation on a good-faith basis." (Id. at 13.)

Clearly, the Court's hope was misplaced.  Since the issuance of the November 13 Order, Mr. Quigg has remained undeterred.  First, neither he nor Defendants have paid to Plaintiffs the monetary sanction originally imposed by the November 13 Order, despite the Court's demand that it be paid within 45 days of that order.  This

7

alone is grounds for imposing additional sanctions.  See Durant v. Traditional Investments, Ltd., No. 88 Civ. 9048 (PKL), 1992 WL 51557 (S.D.N.Y. March 12, 1992)(imposing additional sanctions where defendant failed to pay previous award of monetary sanctions).  Second, Mr. Quigg has continued his practice of seeking continuances at the last minute based on excuses that can charitably be described as misleading.  Notwithstanding the fact that misleading the Court could separately serve as justification for sanctions under Rule 11,[2] this tendency shows immense disrespect for the Court, for the litigants, and for Mr. Quigg's opposing counsel.[3]  Third, and most importantly, Mr. Quigg has failed to appear for two additional Court-ordered conferences since the issuance of the November 13 Order.  Given the substance of that prior order, the Court need not explain why this would serve as a proper basis for imposing additional sanctions.

---

[2] See, e.g., Macolor v. Libiran, No., 2015 WL 1267337, at *4 (S.D.N.Y. Mar. 18, 2015) (noting that "making a false statement with an intent to mislead the Court certainly meets [the] definition" of "subjective bad faith" required for the imposition of sanctions under Rule 11.).

[3] As demonstrated by the incident involving Mr. Pokel and the January 30 conference, see supra at 2-3, this practice has also evinced Mr. Quigg's disrespect for other attorneys admitted to practice in the Southern District of New York.  That Mr. Quigg would attempt to pass off his professional responsibilities in this matter to another attorney without so much as bothering to speak to him personally or provide him with background information on the representation is inexcusable.

Accordingly, and given Mr. Quigg's failure to demonstrate any reason why such sanctions should not be opposed, the Court elects to impose the full range of sanctions described in the Court's February 4 Order to Show Cause.  (See supra at 3-4 (citing dkt. no. 50).)

III. CONCLUSION

For the reasons detailed above: (1) Mr. Quigg's original request to be admitted pro hac vice [dkt. no. 13] is GRANTED, retroactive to October 3, 2018, see supra n.1; (2) the Clerk of the Court is directed to strike the Answer of Defendants Aposta, Inc. and Gene Hacker dated January 4, 2018 [dkt. no. 26]; (3) a default judgment is entered against Defendants Aposta, Inc. and Gene Hacker; and (4) the Clerk of the Court is directed to revoke Mr. Quigg's pro hac vice admission in the Southern District of New York. Plaintiffs may initiate an inquest into damages before the undersigned.  In addition, Plaintiff may make an additional request for monetary sanctions in the form of attorney's fees against Mr. Quigg and/or Defendants Aposta, Inc. and Gene Hacker from the date of the original order imposing sanctions.

**SO ORDERED.**

Dated:   New York, New York
         May 21, 2020

_____
LORETTA A. PRESKA
Senior United States District Judge